IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHUKUEMEKA OKORO,                          *

  Plaintiff,                             *

v.                                          *    Civil Case No. 15-3370-JMC

OCWEN LOAN SERVICING, LLC,                  *

  Defendant.                            *

          * * * * * * *

## MEMORANDUM AND ORDER

  This case has been referred to me for all proceedings by the consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 301.  (ECF Nos. 12, 13, 14.)  Presently pending before the Court is Plaintiff's Motion for Leave to Amend Complaint.  (ECF No. 18.)  The matter has been fully briefed (ECF Nos. 22, 24), and no hearing is necessary, Loc. R. 105.6 (D. Md. 2014).  For the following reasons, Plaintiff's motion is DENIED.

## I. Procedural History

  This case was filed by Plaintiff, Chukuemeka Okoro, on September 24, 2015 against Defendant, Ocwen Loan Servicing, LLC ("Ocwen") and removed to this Court on November 4, 2015 on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Compl., ECF No. 2; Notice of Removal, ECF No. 1.)  Mr. Okoro's complaint asserted counts for (1) breach of contract, (2) specific performance, and (3) negligent misrepresentation, all relating to Ocwen's failure to finalize and record a deed in lieu of foreclosure on a piece of real property.  The property at issue was subject to a loan, on which Mr. Okoro, the mortgagor, had ceased making loan payments and for which Ocwen was then the mortgagee.  On December 11, 2015, then-presiding Judge Bredar entered a tentative scheduling order that imposed a deadline of January

13, 2016 for requests to modify the scheduling order, and further stated that "[t]hereafter, the schedule will not be changed except for good cause." (ECF No. 10-1.) On January 14, 2016, this case was referred to me for all proceedings, and by letter order, I stated to the parties that absent any indication that they would like to amend the dates set forth therein, the tentative scheduling order entered by Judge Bredar would govern the case. (ECF No. 15.) The parties did not indicate any desire to modify the tentative scheduling order. Included in the scheduling order was a deadline of February 16, 2016 for moving for joinder of additional parties and amendment of pleadings. No such motions were filed by the deadline. On March 31, 2016, Mr. Okoro filed the instant motion, seeking to amend his complaint to add a fraud count.

## II.    Legal Standard

A motion for leave to amend pleadings that is filed subsequent to the deadline for moving to amend pleadings will only be granted when it satisfies both the "good cause" standard of Rule 16(b)(4) for modifying scheduling orders and the "when justice so requires" standard of Rule 15(a)(2) for granting leave to amend pleadings. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295 (4th Cir. 2008) ("Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.").

Under Rule 16(b)(4), good cause exists where the moving party has "diligently made efforts to meet court imposed deadlines." *Tawwaab v. Virginia Linen Service, Inc.*, 729 F. Supp. 2d 757, 768 (D. Md. 2010). The Rule 16(b)(4) good cause inquiry focuses more on the timeliness of the motion and the reasons for its tardy submission than the substance of the proposed amendment. *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373-74 (D. Md. 2002). The primary consideration is the diligence of the movant. *Id.* at 374. Relevant factors include the "danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the defendant acted in good faith."

*Tawwaab*, 729 F. Supp. 2d at 768-69.   Good cause may exist "where at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline."   *Id.* at 768 (citing *In re Lone Star Indus., Inc. Concrete R.R. Cross Ties Litig.*, 19 F.3d 1429, 1994 WL 118475, at *11 (4th Cir. Apr. 7, 1994) (unpublished opinion)). Should the Rule 16 standard be met, the focus shifts to Rule 15.   In that regard, Rule 15(a)(2) instructs that leave to amend a complaint should be freely given "when justice so requires," and a motion to amend should be denied "only when it would be prejudicial, there has been bad faith, or amendment would be futile."   *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301 (D. Md. 2015).

## III.   Analysis

Because Mr. Okoro has not established that good cause exists to modify the scheduling order or that "justice so requires" the Court to grant him leave to amend his Complaint, his motion must be denied.

### A.   Federal Rule of Civil Procedure 16(b)(4)

Mr. Okoro initially argued only that the Court should grant his motion for leave to amend his complaint pursuant to Rule 15(a) because Ocwen "has conducted itself dishonestly and maliciously toward [him] and is continuing its egregious conduct, causing serious harm to [him], as further alleged in the proposed amended complaint."   (Pl.'s Mot ¶¶ 3-4.)   Mr. Okoro offered no explanation, however, for his delay in seeking to amend his complaint that could constitute "good cause" to modify the deadline in the scheduling order.   After this deficiency was pointed out by Ocwen, Mr. Okoro attempted to justify his delay, explaining that Ocwen "started reporting [him] as delinquent in the mortgage payments in March 2016, despite the fact that [Ocwen] no longer services nor is the mortgagee of the loan."   (Pl.'s Reply ¶ 1.)   To further

3

account for his delay Mr. Okoro alleged that Ocwen had withheld certain discovery and engaged in other "evasive" discovery behaviors.  (*Id.*)

In order to determine whether Mr. Okoro's explanation concerning Ocwen's alleged March 2016 reporting of Mr. Okoro as delinquent on his mortgage payments adequately accounts for Mr. Okoro's delay, the Court will first evaluate the relationship between the alleged reporting and the purpose of Mr. Okoro's amendment – to add a claim for fraud to his complaint. To state a claim for fraud under Maryland law, a plaintiff must allege:

> (1) the defendant made a false representation to the plaintiff,
> (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth,
> (3) the misrepresentation was made for the purpose of defrauding the plaintiff,
> (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and
> (5) the plaintiff suffered a compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005).  In asserting his fraud claim, Mr. Okoro alleges that Ocwen "dishonestly and continuously continues to report [him] as delinquent under the Loan . . . despite the fact that [Mr. Okoro] transferred the Loan to Seneca Mortgage Service in November, 2015," (the "delinquency representation"). (Am. Compl. ¶ 57, ECF No. 18-1.) After reviewing Mr. Okoro's fraud claim, however, I cannot conclude that Ocwen's alleged delinquency representation could establish a claim for fraud. For example, Mr. Okoro does not allege that he is not delinquent on his mortgage, or that the delinquency representation was otherwise false.  Moreover, even if the delinquency representation was false, it was not made to Mr. Okoro but to a third party.  Nor does Mr. Okoro assert that he relied on the delinquency representation, or that any such reliance was justified.  I would also note that according to the credit report that accompanied Mr. Okoro's briefing of this issue, Ocwen has been reporting Mr. Okoro as delinquent at least since November 2015.  (Pl.'s Reply Ex. A at 9, ECF No. 24-1.)  The

"new" delinquency representation in March 2016 itself thus cannot independently support a claim for fraud when considered in light of all of the circumstances.

Moreover, the delinquency representation is also not meaningfully related to the representation that does form the basis of Mr. Okoro's fraud claim – Ocwen's alleged statement to Mr. Okoro that the agreement had to be abandoned because there was an outstanding lien on the title to Mr. Okoro's property by RJL Holdings, LLC when a Certificate of Satisfaction for that lien had been filed in the Baltimore City Land Records (the "lien representation"). (Am. Compl. ¶50.) Setting aside whether Mr. Okoro's allegations are otherwise generally sufficient to state a claim for fraud based on the lien representation, Ocwen's alleged delinquency representation does not establish any of the elements necessary for him to do so. At best, the damages stemming from the delinquency representation may be tangentially related to the injuries Mr. Okoro claims to have suffered as a result of the lien representation, insofar as both may be traced back to Ocwen's decision not to finalize the deed in lieu of foreclosure. However, Mr. Okoro's fraud count asserts several other injuries stemming from the lien representation, such that any injuries stemming from the delinquency representation were superfluous to Mr. Okoro's fraud claim. Further, as noted above, Ocwen has been reporting Mr. Okoro as delinquent since at least 2015 and this information was available to him in his credit report. Accordingly, I cannot conclude that Ocwen's alleged act of continuing to report Mr. Okoro as delinquent in March 2016 accounted for Mr. Okoro's delay in asserting his fraud claim, since the allegations supporting that claim were otherwise developed long before the deadline for moving to amend pleadings.

Next, I will consider whether Ocwen's allegedly "evasive" discovery behavior constitutes good cause for Mr. Okoro's delay in moving to amend his complaint. In particular, Mr. Okoro

asserts that his Interrogatories 8 and 9 are related to Ocwen's lien representation allegations in his fraud claim and that Ocwen's evasive behavior in answering those Interrogatories prevented him from moving to amend his complaint prior to the deadline for doing so.  Although Mr. Okoro's Interrogatories 8 and 9 are related to the lien representation, it is unclear from Mr. Okoro's argument why Ocwen's alleged delay until March 17, 2016 in answering those interrogatories prevented him from timely moving to assert his fraud claim.

First, Paragraphs 15-20 of Mr. Okoro's *original* complaint include the allegation that Ocwen asserted that there was a lien notwithstanding Mr. Okoro providing Ocwen with the Certificate of Satisfaction for the RJL Holdings, LLC mortgage.  This is the same basis for Mr. Okoro's proposed fraud claim.

Second, Ocwen's answers to Interrogatories 8 and 9 provide no new information on this issue and assert that Ocwen did not record or cause to be recorded a lien satisfaction of its own. To the contrary, Mr. Okoro's quarrel with the adequacy of these responses seems to be the fact that they provide no new information, not that information was withheld strategically by Ocwen until after the amendment deadline.  To the extent Mr. Okoro takes issue with the completeness or adequacy of Ocwen's responses, the proper avenue would be to pursue this as a discovery dispute in accordance with the Court's Local Rules and the Federal Rules of Civil Procedure. The Court further notes that Mr. Okoro's argument on this point is undermined by the fact that he was able to draft his fraud claim set forth in his proposed amendment despite Ocwen's "evasive" supplemental responses, which he claims still failed to adequately answer the interrogatories.

Finally, after reviewing both the supplemental answers and the fraud claim, there does not appear to be any information in Mr. Okoro's fraud claim that is based on the supplemental

responses or any further indication that the basis of the proposed fraud claim was not known to Plaintiff at the time of the filing of the original complaint.   Conceivably, the information included in proposed Paragraph 50—asserting that Ocwen not only knew of the satisfaction of the RJL Holdings, LLC mortgage but in fact itself obtained and recorded the satisfaction—might constitute such information, but there is nothing before the Court that suggests this information was unknown to Mr. Okoro until after Ocwen's supplemental discovery responses, which themselves deny any such behavior.

Accordingly, Ocwen's discovery behavior, including its supplemental answers to Mr. Okoro's Interrogatories 8 and 9, does not excuse Mr. Okoro's delay in seeking to amend his complaint.   Because Mr. Okoro has failed to provide any justification for his delay, I cannot conclude that good cause exists to modify the deadline for amending pleadings set forth in the scheduling order for this case.

### B.        Federal Rule of Civil Procedure 15(a)(2)

Finally, even if Mr. Okoro had established good cause to modify the scheduling order, his proposed amendment would be highly prejudicial to Ocwen, such that his motion for leave to amend would nevertheless be denied under Rule 15(a)(2).   In particular, Mr. Okoro's fraud claim would substantially change the scope of the litigation insofar as it adds a theory that requires a showing of intent and that bears the potential for punitive damages, neither of which can be said of the claims asserted in Mr. Okoro's original Complaint.   Defendant would thus be prejudiced by the discovery burdens imposed by adding this new theory of liability only days before the May 13, 2016 discovery deadline. *See Sharkey IRO/IRA v. Franklin Resources*, 263 F.R.D. 298, 302 (D. Md. 2009) (finding prejudice where a proposed amended complaint asserted a new theory of liability that would impose additional discovery burdens on the defendant).   The Court

declines to impose this burden on Defendant, particularly in the face of Plaintiff's previous strong opposition to any modification of the impending discovery deadline. [1]

**IV.      Conclusion**

For the foregoing reasons, Plaintiff's Motion for Leave to Amend Complaint (ECF No. 18) is DENIED.


Dated April 28, 2016                                            _____/s/_____

                                                                         J. Mark Coulson
                                                                         United States Magistrate Judge

---

[1] Indeed, in light of Mr. Okoro's insistence that the scheduling order not be modified to accommodate any additional discovery, had the Court granted his motion, Mr. Okoro apparently would have Ocwen defend against his fraud claim without engaging in any discovery related to that claim.